IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| NICOLE HART | : | |
| 1524 Elkton Place | : | |
| Cincinnati, Ohio 45224, | : | CASE NO. 17-00567 |
| | : | |
| and | : | |
| | : | |
| JANICE DAMICO | : | |
| 5066 River Road | : | |
| Cincinnati, Ohio 45233, | : | |
| | : | |
| and | : | |
| | : | |
| TAMMY PETERS | : | |
| 3754 Floral Avenue | : | |
| Cincinnati, Ohio 45212 | | |

    Plaintiffs,

v.

EM SNS LLC                                                **COMPLAINT**
4381 Reading Road                           **WITH JURY DEMAND**
Cincinnati, Ohio 45229,

and

STEVEN FRANKEL
8355 Crestdale Court
Cincinnati, Ohio 45236

    Defendants.

_____

1

I.   **PARTIES**

1. Plaintiff Nicole Hart ("Hart") is an Ohio citizen who resides in Cincinnati, Ohio. During all relevant times, Hart was an "employee" within the meaning of 29 U.S.C. § 203(e)(1), Ohio Rev. Code § 4111.14(B), and Article II, Section 34a, of the Ohio Constitution.

2. Plaintiff Janice Damico ("Damico") is an Ohio citizen who resides in Cincinnati, Ohio. During all relevant times, Hart was an "employee" within the meaning of 29 U.S.C. § 203(e)(1), Ohio Rev. Code § 4111.14(B), and Article II, Section 34a, of the Ohio Constitution

3. Plaintiff Tammy Peters ("Peters") is an Ohio citizen who resides in Cincinnati, Ohio. During all relevant times, Hart was an "employee" within the meaning of 29 U.S.C. § 203(e)(1), Ohio Rev. Code § 4111.14(B), and Article II, Section 34a, of the Ohio Constitution. Hart, Damico, and Peters will be referred to collectively as "Plaintiffs" throughout this Complaint.

4. Defendant EM SNS LLC ("EM SNS LLC") is an Ohio for profit limited liability company, with its principle place of business located at 4381 Reading Road, Cincinnati, Ohio 45229. During all relevant times, EM SNS LLC was a "person" and "employer" within the meaning of 29 U.S.C. § 203, Ohio Rev. Code § 4111.14(B), and Article II, Section 34a, of the Ohio Constitution.

5. Defendant Steven Frankel ("Frankel") is an Ohio citizen who resides at 8355 Crestdale Court, Cincinnati, Ohio 45236. During all relevant times, Frankel was a "person" and "employer" within the meaning of 29 U.S.C. § 203, Ohio Rev. Code § 4111.14(B), and Article II, Section 34a, of the Ohio Constitution. Upon information and belief, Frankel is a member and

2

the owner of EM SNS LLC. Defendants EM SNS LLC and Frankel will be referred to jointly as "Defendants" throughout this Complaint.

6. Plaintiffs seeks back pay, front pay, benefits, compensatory damages, liquidated damages, punitive damages, attorneys' fees and cost associated with this action, and all other damages and equitable relief allowed to them for retaliation by Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

7. Plaintiff Hart also seeks Plaintiffs seeks back pay, front pay, benefits, compensatory damages, punitive damages, attorneys' fees and cost associated with this action, and all other damages and equitable relief allowed to her for retaliation by Defendants under Ohio Revised Code § 4112.02(I) for Hart opposing unlawful discriminatory practices, filing a charge of discrimination and participating in the investigation process.

8. Plaintiffs Damico and Peters also seek treble damages, an amount set by the court sufficient to compensate Plaintiffs Damico and Peter and deter future violations, and their attorneys' fees and cost associated with this action under Ohio's Minimum Fair Wage Standards Act ("Ohio Minimum Wage Act"), Ohio Revised Code § 4111.01 et seq., and Article II, Section 34a, of the Ohio Constitution based on Defendants' failure to pay hourly wages that meet the Ohio minimum wage rate.

## II. JURISDICTION AND VENUE

9. Jurisdiction in this case is proper under 28 U.S.C. § 1331 which grant the District Court jurisdiction to hear this action without regard to the amount in controversy.

10. Defendants engaged in business in this District and engaged in tortious acts or omissions within this District, and has otherwise made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

11. Supplemental jurisdiction over Plaintiff Damico and Peters state law claims is proper pursuant to 28 U.S.C. § 1367 because their state law claims are so related to claims in the action within such original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is appropriate in this District Court under 28 U.S.C. § 1391(b) because (i) Defendants are domiciled and operate their business in this District, (ii) a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and (iii) this is the District in which Plaintiffs work and reside.

### III. FACTUAL BACKGROUND

#### A. Sugar n' Spice Restaurant

13. Since 2010, Defendants have been the owners and operators of a restaurant named Sugar n' Spice Restaurant ("Sugar n' Spice") located at 4381 Reading Road, Cincinnati, Ohio 45229, which specializes in breakfast and lunch fair. Upon information and belief, Sugar n' Spice generates an annual volume of sales in excess of $500,000.00.

14. As part of its business operations, Defendants employ numerous servers, hosts, and kitchen staff. During the relevant times at issue, Plaintiffs worked for Defendants as servers, hosts, or both.

15. Upon information and belief, beginning in 2010 and continuing through 2016, Defendants engaged in various activities that violated both state and federal wage laws. For example, at the end of each shift tipped servers were required to pay Frankel $20.00 from their tips, which he then allegedly either shared with the non-tipped kitchen staff or kept for himself.

16. After an investigation by the U.S. Department of Labor ("DOL") uncovered violations of federal wage laws, Defendants were order by the DOL to make payment for unpaid

wages to various employees, including Plaintiffs, for the period of December 28, 2014 through December 25, 2016. This DOL investigation is identified as Case No. 180-9279. Defendants were ordered to make the following DOL payments to Plaintiffs:

    i. $458.55 repaid to Hart;

    ii. $2,125.95 repaid to Damico; and

    iii. $4,710.99 repaid to Peters.

17. Upon information and belief, Defendants made the DOL payments to various current and former employees in June 2017. As part of receiving payment, current and former employees (including Plaintiffs) and Defendants' representative signed a DOL form giving notice to Defendants it was illegal to retaliate or seek repayment of these DOL payments from their current and former employees (including Plaintiffs).

18. Nevertheless, as detailed further in this Complaint, Defendants retaliated against Plaintiffs and other employees by, amount other things, reducing or eliminating hours, wages, and shifts, and constructively discharging Hart and Damico. Frankel also sought "kickbacks" by requesting that Plaintiffs and other employees "repay" the DOL payments or "donate" the DOL payments to his charity, Most Valuable Kids. Upon information and belief, several employees have either "repaid" their DOL wages back to Frankel or "donated" the DOL wages to Most Valuable Kids under threat and duress from Frankel. To date, Plaintiffs have refused to "repay" or "donate" their earned wages back to Defendants.

19. Upon information and belief, Frankel also charged "register" fees and other unlawful fees to Plaintiffs and other employees to try to recover the DOL payment proceeds paid to Plaintiffs and other employees.

5

20. Defendants' forgoing misconduct was in retaliation for engaging in protected activities and in violation of state and federal law.

### B. Nicole Hart

21. In May 2015, Hart started working at Sugar n' Spice as a host and server. After working for Defendants for about a year, Hart made numerous complaints to Frankel about his treatment of her and his failure to properly pay earned wages to the staff. Frankel's continued unlawful conduct compelled Hart to file a series of complaints against Defendants with state and federal agencies – all protected activities.

22. On July 12, 2016, Hart filed a charge of discrimination with the United States Equal Employment Opportunity Commission office in Cincinnati, Ohio ("EEOC") against Defendants alleging discrimination and retaliation based on race, color, and sex. This charge is attached as Exhibit A.

23. On July 14, 2016, Hart filed a complaint with the National Labor Relations Board alleging retaliation for engaging in protected activities. This complaint is attached as Exhibit B.

24. On December 1, 2016, Hart filed a complaint with the Ohio Department of Commerce alleging violations of minimum wage laws by Defendants. This complaint is attached as Exhibit C.

25. In early December 2016, Hart also filed a complaint with the DOL Wage and Hour Division alleging violations of federal wage laws. The DOL investigation was Case No. 180-9279. As a result of this investigation, the DOL determined Defendants failed to pay proper wages and ordered Defendants to pay tens of thousands of dollars in back wages for the period of

December 28, 2014 through December 25, 2016. Attached as Exhibit D is a letter from the DOL written in response to Hart's complaint.

26. During the period of July 2016 through December 2016, Hart was questioned by federal and state investigators and actively participated in the investigation process.

27. In response to Hart filing these complaints and working with state and federal agencies, Defendants targeted and retaliated against Hart for engaging in these protected activities. These retaliatory activities include, but are not limited to the following:

i. Defendants taking away all of Hart's waitress shifts for two weeks in August 2016;

ii. Defendants significantly reducing Hart's hours in September 2016 through November 2016;

iii. Defendants unlawfully reducing paychecks for "register" shortages and other purported charges to recover the DOL payment proceeds paid to Plaintiffs and other employees;

iv. Frankel instructing other employees not to speak with Hart, referring to her as a "thief" and "liar"; and

v. Defendants completely removing Hart from the work schedule in December 2016 and constructively discharging Hart from her employment.

28. No non-retaliatory reason was given to Hart for reducing and eliminating her hours and shifts. On the contrary, Frankel repeatedly stated to employees that Hart was "extorting" him and referred to the DOL payments as "extortion checks."

29. Upon information and belief, Defendants' sole purpose in reducing Hart's shifts and hours was in retaliation for Hart engaging in protected activities and with the goal of constructively terminating her employment.

30. Since being constructively discharged, Hart has been unable to find new employment. Hart is the breadwinner for her family. Defendants' misconduct has caused extreme financial, physical, and mental anguish for her and her family as she has had to deal with the stress of being having her income reduced and being targeted for retaliation at work. The stress of being wrongfully discharged is compounded by the fact Hart is pregnant.

### C. Janice Damico

31. In or around March 2011, Damico began working at Sugar n' Spice as a server.

32. During the period of July 2016 through December 2016, Damico was questioned by federal and state investigators and actively participated in the investigation process.

33. Defendants targeted and retaliated against Damico for engaging in these protected activities. These retaliatory activities include, but are not limited to the following:

   i. Defendants reducing Damico's hourly wage from $4.50 to $3.50 in 2017 to recover the DOL payment proceeds paid to Plaintiffs and other employees;
   ii. Defendants violating Ohio's minimum wage statute by failing to pay Damico an hourly wage of $4.08 in 2017;
   iii. Defendants unlawfully reducing Damico's paychecks for "register" shortages and other purported charges to recover the DOL payment proceeds paid to Plaintiffs and other employees;

      iv. Frankel seeking "kickbacks" by requesting that Damico "repay" the DOL payment or "donate" her DOL payment to his charity, Most Valuable Kids;

      v. Defendants reducing Damico's hours and shifts because Damico refused to "repay" or "donate" her DOL payment; and

      vi. Constructively discharging Damico from her employment based on the foregoing retaliation and misconduct.

34. No non-retaliatory reason was given to Damico for reducing and eliminating her hours and shifts. On the contrary, Frankel repeatedly stated to Plaintiffs and other employees that they were "extorting" him and referred to the DOL payments as "extortion checks."

35. Upon information and belief, Defendants sole purpose in engaging in these unlawful activities against Damico was in retaliation for Damico engaging in protected activities and refusing to "repay" or "donate" her DOL payment.

36. Since being constructively discharged, Damico has been unable to find new employment. Defendants' misconduct has caused extreme financial, physical, and mental anguish for her and her family as she has had to deal with the stress of being having his income significantly reduced and being targeted for retaliation at work.

    **D.**    **Tammy Peters**

37. For over twenty years, Peters has worked at Sugar n' Spice as a server and continues to be employed by Defendants.

38. During the period of July 2016 through December 2016, Peters was questioned by federal and state investigators and actively participated in the investigation process.

9

39. Defendants targeted and retaliated against Peters for engaging in these protected activities. These retaliatory activities include, but are not limited to the following:

   i. Defendants reducing Peter's hourly wage from $4.50 to $3.50 in 2017 to recover the DOL payment proceeds paid to Plaintiffs and other employees;

   ii. Defendants violating Ohio's minimum wage statute by failing to pay Peters an hourly wage of $4.08;

   iii. Defendants unlawfully reducing Peter's paychecks for "register" shortages and other purported charges to recover the DOL payment proceeds paid to Plaintiffs and other employees;

   iv. Frankel seeking "kickbacks" by requesting that Peters repay the DOL payments or donate her DOL payment to his charity, Most Valuable Kids; and

   v. Defendants creating a hostile work environment based on Peters' refusal to "repay" or "donate" her DOL payment.

40. Frankel repeatedly stated to Peters and other employees that they were "extorting" him and referred to the DOL payments as "extortion checks."

41. Upon information and belief, Defendants sole purpose in engaging in these unlawful activities against Peters was in retaliation for Peters engaging in protected activities and refusing to "repay" or "donate" her DOL payment.

## COUNT I
## RETALIATION
### (Violation of 29 U.S.C. § 215(a)(3))
### (Plaintiffs Hart, Damico, and Peters)

42. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Section 215(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

44. Plaintiffs engaging in protected activities by filing a complaint with the DOL based Defendants' violations of the FLSA, working with DOL investigators, and actively participating in the DOL investigation process, including refusing to "repay" or "donate" their DOL payments.

45. Defendants subjected Plaintiffs to adverse employment actions when they targeted Plaintiffs by (among other things) reducing their hours and wages, creating a hostile work environment, and constructively discharging Plaintiffs Hart and Damico.

46. Plaintiffs have been damaged because of Defendants' retaliation in an amount to be determined by the Court.

## COUNT II
## RETALIATION
### (Violation of Ohio Rev. Code Ch. 4112.02(I))
### (Plaintiff Hart)

47. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. Section 4112.02(I) of the Ohio Revised Code prohibits retaliation by employers towards their employees for engaging the protected activity of opposing any practice made an unlawful employment practice (*i.e.*, racial and sexual discrimination and harassment, and retaliation in the workplace).

49. Plaintiff Hart engaging in a protected activity when she reported race, color, and sex discrimination and retaliation in the workplace to her employer, and filed a charge of discrimination with the EEOC.

50. Defendants subjected Plaintiff Hart to adverse employment actions when they targeted Plaintiff Hart by (among other things) reducing her hours and wages, creating a hostile work environment, and constructively discharging her.

51. Plaintiff Hart has been damaged because of Defendants' retaliation in an amount to be determined by the Court.

## COUNT III
## FAILURE TO PAY OHIO MINIMUM WAGE
### (Violation of Ohio Minimum Wage Act and Ohio Constitution, Article II, Section 34a)
### (Plaintiffs Damico and Peters)

52. Plaintiffs incorporates by reference the allegations contained in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. The Ohio Minimum Wage Act requires all employers to pay a minimum wage to certain types of employees. Ohio Revised Code § 4111.02. Additionally, the Ohio Constitution was amended under Article II, Section 34a to ensure minimum wages for Ohio workers and states that "[t]his section shall be liberally construed in favor of its purposes." Further, the Ohio Minimum Wage Act relies on the FLSA's definition of "employer" for purposes of a minimum wage claim, and will be liberally construed to achieve the goals of the act. Ellington v. E. Cleveland, 689 F.3d 549, 554-555 (6th Cir. 2012) (recognizing that "the remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications").

54. In 2017, Ohio's minimum hourly wage is $4.08 for tipped employees such as Plaintiffs Damico and Peters.

55. Defendants violated the Ohio Minimum Wage Act by paying Plaintiffs Damico and Peters an hourly wage of $3.50.

56. Plaintiff Damico and Peters have been damaged because of Defendants' violation of the Ohio Minimum Wage Act in an amount to be determined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask this Court to enter judgment in their favor as follows:

A. Award Plaintiffs all back pay, front pay, all lost benefits, and other equitable belief;

B. Award Plaintiffs all compensatory, statutory, and liquidated damages in an amount to be determined at trial;

C. Award Plaintiffs punitive damages for Defendants' willful and malicious conduct in an amount to be determined at trial;

D. Award Plaintiffs pre-judgment and post-judgment interested in an amount to be determined at trial;

E. Award Plaintiffs their attorney's fees, costs and expenses in an amount to be determined at trial; and

F. Award Plaintiffs such other and further relief as this Court deems necessary.

Respectfully submitted,

/s/ *Adam V. Sadlowski*
Adam V. Sadlowski, Trial Attorney (0079582)
Cori R. Besse (0081447)
SADLOWSKI & BESSE L.L.C.
11427 Reed Hartman Highway, Suite 217
Blue Ash, Ohio 45241
Tel: (513) 618-6595
Fax: (513) 618-6442
asadlowski@sb-lawyers.com
cbesse@sb-lawyers.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury on all triable issues.

  /s/ *Adam V. Sadlowski*
Adam V. Sadlowski